IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN R. BETKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-CV-1127-WHA-WC |
| | ) | (WO) |
| KELLEY FOODS OF ALABAMA, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Before the court is Defendants Kelley Foods of Alabama, Inc. ("Kelley Foods"), Eddie Kelley, and Jerry Kelley's Motion to Dismiss Without Prejudice, or, Alternatively to Stay and to Compel Arbitration, or, Alternatively to Dismiss with Prejudice. (Doc. # 6.) For the reasons discussed below, Defendants' motion to stay and compel arbitration is due to be GRANTED.

### II. FEDERAL ARBITRATION ACT

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA evinces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25. The FAA provides that, upon a party's "alleged failure, neglect, or refusal . . . to arbitrate under a written agreement for arbitration," an aggrieved party may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA

further provides that "upon any issue referable to arbitration under an agreement in writing for such arbitration," and "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Where a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Tech. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)). Arbitration is, however, a matter of contract; thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am.*, 363 U.S. at 582. Ultimately, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Tech. Inc.*, 475 U.S. at 649). In determining which claims are arbitrable, the court looks to the intent of the parties, and in so doing, gives full effect to all provisions in the contract. *Redmon v. Soc'y & Corp. of Lloyds*, 434 F. Supp. 2d 1211, 1218 (M.D. Ala. 2006) (citing *Bullock v. United Benefit Life Ins. Co.*, 165 F. Supp. 2d 1259, 1261 (M.D. Ala. 2001).

### III. FACTS

Plaintiff John R. Betkowski ("Betkowski") filed suit on December 14, 2009, shortly after receiving a right-to-sue letter on his EEOC claim which he had filed on August 6, 2009, alleging violations of the Age Discrimination in Employment Act of 1967, §§ 29 U.S.C. 621 *et seq.*, and various related state-law claims. The Complaint alleges that Betkowski began working for Kelley Foods on or about October 20, 2003. The alleged harassment and age discrimination "started almost immediately and continued throughout [Betkowski's] employment until he was terminated on July 6, 2009, following his complaints to management of age discrimination." (Compl. ¶ 14; Doc. # 1.) Betkowski specifically alleges that Defendant Eddie Kelley, Co-Owner, CEO, and President of Kelley Foods, made comments about Betkowski's age on October 20, 2008 and March 11, 2009. (*Id.* at ¶¶ 16, 18-19.)

In July, 2005, Kelley Foods issued to all its employees Personnel Policy Number 19, its new Alternative Dispute Resolution Policy, to become effective on August 1. This is the arbitration agreement ("the Policy" or "the arbitration agreement") at the center of the current dispute. (Doc. # 6, Ex. 1, Attach. A.)

On July 20, 2005, Betkowski signed a statement acknowledging that he had received and read a copy of the Policy and stated that

> My signature means
> . . . .
> 2. That in consideration of my continued employment at will at Kelley Foods, I agree to abide by the policy with respect to all disputes between myself and Kelley Foods involving my employment with Kelley Foods or the termination of that employment;
> . . . .

(Doc. #6, Ex. 1, Attach. B.)

3

The Policy itself provides that in the event of an employment dispute, employees have the option to mediate; however, "[i]f agreement is not reached through mediation, or if the parties do not request it, the parties have as their sole and exclusive option the opportunity to seek final and binding arbitration of disputes involving termination or legally protected rights." (*Id.* at 4.) By its terms, the Policy serves as "the exclusive method of resolving Kelley Foods employment disputes that are legal claims other than those expressly discussed below." (*Id.* at 2.) In reference to the excluded claims, the Policy states, in relevant part, as follows:

> **What Type of Claims are Not Covered?**
>
> The only legal claims not covered by *The Policy*, are:
>
> • Claims for indemnity, medical or vocational benefits under state and federal Workers Compensation laws,
> • Unemployment compensation benefits,
> • Disagreement with the establishment, content, application or amendment of personnel or employment policies (unless a legally protected right is involved) or Any incident or situation occurring before August 1, 2005.
> • The enforcement of a covenant not to compete
> • Disagreements that are not legal claims

(*Id.* at 3) (punctuation and typeface as appearing in the Policy.)

The parties dispute whether Betkowski's claims fall within the exclusions enumerated above. Betkowski contends that the language "Any incident or situation occurring before August 1, 2005," excludes all claims that allege misconduct occurring before that date, and, therefore, excludes the claim in this suit, since the Complaint alleges the harassment and age discrimination "started almost immediately" after his hiring in 2003. Defendants contend, on the other hand, that the Policy only excludes legal claims arising from conduct occurring before August 1, 2005, and that "none of [Betkowski's] complaint's allegations raise a legal claim

4

arising before August 1, 2005." For the reasons discussed below, the court finds Defendants' interpretation of the Policy more persuasive.

## IV. DISCUSSION

With little argument or citation to case law, the parties dispute whether the complaint falls within the arbitration policy's excluded claims, *i.e.*, they dispute the "arbitrability" of the complaint. *See Howsam*, 537 U.S. at 83. Betkowski's six-sentence response to Defendants' motion to stay and compel arbitration simply quotes the language "Any incident or situation occurring before August 1, 2005," and contends that because Betkowski "states in his complaint that the conduct of the Defendants began almost immediately upon his hiring, on October 20, 2003," the Defendants' conduct is "outside the Arbitration policy."[1] Defendants respond to this argument by pointing out that "the policy expressly excludes only 'legal claims'" and that "none of [Betkowski's] complaint's allegations raise a legal claim arising before August 1, 2005." Defendants go on to argue that "no legal claim for such behavior can exist under federal law more than 180 days before he filed a September 15, 2009 charge . . . nor under state law more than two years before he filed his December 14, 2009[] complaint . . . ."

Before addressing whether the parties have submitted the particular dispute at issue to arbitration, the court must address the threshold question of whether the interpretation of the arbitration agreement is an issue of judicial determination. "[U]nless an arbitration agreement

---

[1] Betkowski further asserts that Defendants' motion is due to be dismissed because the Complaint alleges claims against the individual supervisors. Betkowski, however, does not attempt to explain or support this statement. The court declines to entertain such an unsupported, conclusory statement. However, even if the court were to entertain such a statement, it is clearly without merit. The policy itself expressly covers all employees, includes disputes "between employees," and references "any claim, dispute or issue . . . which relates to, or arises out of, that employee's employment." (Doc. # 6, Ex. 1, Attach. A, pp.1-2.)

otherwise stipulates, a court is empowered only to determine the 'substantive' issue of arbitrability – that is, whether a particular dispute falls within the scope of an arbitration clause – and the necessary threshold question of whether that clause is enforceable." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004); *see also Howsam*, 537 U.S. at 83-84 ("The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."). On the other hand, "[a]rbitrators . . . are empowered, absent an agreement to the contrary, to resolve disputes over whether a particular claim may be successfully litigated anywhere at all (due to concerns such as statute of limitations, laches, justiciability, etc.), or has any substantive merit whatsoever." *Klay*, 376 F.3d at 1109. Here, the relevant dispute is whether the complaint, which alleges conduct occurring before August 1, 2005, presents legal claims expressly excluded by the arbitration agreement. If the complaint falls within this exclusionary clause, it is properly before the court. In other words, it is for the court to decide the scope of the arbitration agreement – *i.e.*, what claims are "arbitrable" – and, if it finds that the claims are arbitrable under the agreement, it is for the arbitrator to decide the merits of those claims. *Klay*, 376 F.3d at 1109; *Howsam*, 537 U.S. at 83-84. The arbitrability of the particular claims in this case turns on the interpretation of the arbitration agreement generally, and the exclusionary clause specifically.

As a general matter, "[a]n agreement to arbitrate a dispute is not rendered inapplicable merely because the events giving rise to the cause of action pre-date the signing of the arbitration agreement." *Spurlock v. Life Ins. Co. of Va.*, 2000 WL 1785300, at * 8 (M.D. Ala. Oct. 31, 2000) (citing *Belke v. Merrill Lynch, et. al.*, 693 F.2d 1023, 1028 (11th Cir. 1982) (overturned on

6

other grounds by *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)). In *Belke*, the Eleventh Circuit addressed the situation where "certain acts complained of occurred prior to execution of the arbitration agreement." 693 F.2d at 1028. There, the court held that "[a]n arbitration clause covering disputes arising out of the . . . business between the parties evinces a clear intent to cover more than just those matters set forth in the contract." *Id.* Thus, the Eleventh Circuit takes a broad view of arbitration agreements with provisions covering disputes arising out of the business relationship of the parties. "Such an arbitration provision, 'speaks in terms of relationships and not timing.'" *Spurlock*, 2000 WL 1785300, at * 8 (quoting *Rand Bond of North Am., Inc. v. Saul Stone & Co.*, 726 F. Supp. 684, 687-88 (N.D. Ill. 1989)).

Here, the arbitration agreement covers a broad range of employment disputes. The agreement covers "any claim, dispute or issue of which the employee is (or should be) aware during his or her employment and which relates to, or arises out of, that employee's employment with Kelley Foods." (Doc. # 6, Ex. 1, Attach. A, p. 2.) However, unlike the policies discussed in *Belke* and *Spurlock*, the Kelley Foods arbitration agreement speaks of relationships *and* of timing, specifically excluding legal claims based on "Any incident or situation occurring before August 1, 2005 ." Thus, the court is left to determine the scope of this exclusion. In doing so, it must "parse the text of the agreement and ascertain whether" the parties clearly intended to exclude from mandatory arbitration disputes such as this one. *Lambert v. Austin Ind.*, 544 F.3d 1192, 1197 (11th Cir. 2008).

"In determining the scope of [the Policy]," the court is "guided by both the Federal Arbitration Act and the actual text of the policy." *Lambert*, 544 F.3d at 1197. As discussed above, "'[t]he FAA creates a presumption in favor of arbitrability; so, parties must clearly

7

express their intent to exclude categories of claims from their arbitration agreement.'" *Id.* (quoting *Paladino v. Avnet Computer Tech. Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998)). However, the court may not interpret the language of the arbitration agreement to conflict with the clear intent of the parties. *Id.*

The court finds that the parties have not "clearly expressed [their] intent to exclude" Betkowski's claims from mandatory arbitration. *See Lambert*, 544 F.3d at 1197. The arbitration agreement does not apply to a legal claim based on an "incident or situation occurring before August 1, 2005." Although Betkowski briefly mentions pre-August 2005 conduct in the Complaint by alleging the discrimination and harassment began in October 2003, the Complaint also contains specific allegations of discrimination that occurred post-August 2005, and Betkowski's termination in July, 2009. (*See* Compl. ¶¶ 18-24). Although the arbitration agreement does not state whether it applies to claims based in any way on conduct that occurred both before and after August 2005, the court is bound to interpret such ambiguities in favor of arbitration. *See AT&T Tech. Inc.*, 475 U.S. at 651 ("[A]n order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."). Thus, upon consideration of the Policy as a whole, as well as the FAA's strong presumptions favoring arbitration, the court finds that the Policy does not exclude Betkowski's claims, and thus such claims are subject to mandatory arbitration.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

(1) Defendants' motion to stay and compel arbitration (Doc. # 6) is GRANTED.

(2)  Plaintiff is ORDERED to submit her claims to binding arbitration in accordance with the terms of the arbitration agreement.

(3)  This case is STAYED pending arbitration, pursuant to 9 U.S.C. § 3.  While the Clerk of this court is DIRECTED to close this action for statistical purposes, the court retains jurisdiction and the parties may request reinstatement at any time that they require the court's intervention.

(4)  The parties are DIRECTED to file a notice with the court when arbitration has concluded.

DONE this 23rd  day of March, 2010.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE